IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERALD TAYLOR,

    Plaintiff,

v.                                                      CIV No. 13-15 JCH/GBW

KATHLEEN M. HAYNES BURNS *et al.*,

    Defendants.

### **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on Defendants Gore and Roosevelt County's Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds. *Doc. 60.* Having reviewed the Motion and the accompanying briefing (*docs.89, 90*), I find that (1) Defendant Gore is entitled to qualified immunity; (2) the claims against Defendant County are either premised on a legally impermissible theory of *respondeat superior* or insufficiently pled to survive dismissal; and (3) the Court lacks jurisdiction over Plaintiff's state law claims. I therefore recommend dismissing Plaintiff's action against them.

**I.    BACKGROUND**

The general factual and procedural background of this matter is set forth in my first Report and Recommendations. *See doc. 92.*

Defendant Gore participated in the removal of Mrs. Taylor from Plaintiff's Portales home on August 18, 2012. *Doc. 1 ¶ 32.* During the event, Defendant Gore

allegedly restrained Plaintiff by "forc[ing] [Plaintiff] into the corner" until the conclusion of Mrs. Taylor's removal, thereby denying Plaintiff the ability to "comfort or assist his wife." *Id.* ¶¶ 33, 34. Defendant Roosevelt County allegedly failed to properly supervise or record the removal of Mrs. Taylor. *Id.* ¶ 35.

Defendants Gore and Roosevelt County moved for summary judgment on March 27, 2013. In their pleading, they set forth two separate bases: Defendant Gore asserts the defense of qualified immunity, while Defendant County argues that Plaintiff's claim cannot be valid because *respondeat superior* liability does not exist for § 1983 actions. *Doc.* 60 at 2-3. Plaintiff responded to Defendants' Motion on April 18, 2013. *Doc. 89.*[1] Briefing was completed on April 22, 2013. *Doc. 91.*

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). *See Celotex Corp. v. Catrett*,

---

[1] While Plaintiff's brief is styled as a motion to strike Defendants City of Portales, Hamner, and Meeks "affirmative defenses" (*see* doc. 89 at 1), the substance of the brief is directed at Defendants Gore and County's Motion. I will therefore treat it as a responsive brief to Defendants' Motion (*doc. 60*).

477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55

3

(1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

When evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party. *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). But "[t]his liberal treatment is not without limits, and 'this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (*quoting Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

### B. Qualified Immunity

Summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "A Government official's conduct violates clearly established law when, at the time of

4

the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 107 S.Ct. at 3039 and citing *Malley v. Briggs*, 106 S.Ct. 1092 (1986)). Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

III.  UNDISPUTED FACTS[2]

1. On July 31, 2012, the Ninth Judicial District Court entered an order appointing D'Lyn Ford and Julie Chapman Walker as temporary guardians of Clara Zell Chapman a/k/a Zell Chapman. Randall Burnett was appointed as temporary conservator of Zell Chapman. *Doc. 60*, Ex. A at 2. The appointments were made on the basis of Zell Chapman's alleged incapacity. This order was in effect on August 18, 2012.[3]

---

[2] All material facts set forth in the motion for summary judgment and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

[3] Plaintiff's response repeatedly disputes the existence of a court order which would authorize Defendants' actions. *See, e.g., doc. 89* at 5-6. It is unclear whether Plaintiff is contending that (1) there was no court order; (2) the court order was only temporary and thus not a "true" court order; (3) the Defendants were not holding a copy of the order at the time of their entry into the home; or (4) notwithstanding the court order, there was no warrant authorizing entry into the home. If he is making the first argument, it "is blatantly contradicted by the record" such that I need "not adopt that version of

5

2. Under New Mexico law, unless inconsistent with the order establishing guardianship or some other court order, "a guardian is entitled to custody of the incapacitated person and may establish the incapacitated person's place of abode within or without New Mexico." N.M. Stat. § 45-5-312(B)(1). The language of the court order in this case is not inconsistent with the guardians having this authority with respect to Zell Chapman. No other court order which is inconsistent with this authority has been submitted to the Court and Plaintiff has not argued that one exists.

3. At some point after entry of the order, the Roosevelt County Sheriff's Office was advised of the guardians' intent to remove Zell Chapman from her home located at 1521 S. Abilene Avenue in Portales, New Mexico based on their authority under the order. *Doc. 60*, Ex. B ¶¶ 3, 4, 17. Ms. Ford asked the Sheriff to have a deputy present to "keep the peace" during the removal. *Id.*, Ex. B ¶¶ 4-5.

4. At all relevant times, Defendant Gore was an employee of the Roosevelt County Sheriff's Office. *Id.*, Ex. B ¶ 18. Defendant Gore and another deputy were assigned to "keep the peace" during the removal. *Id.*, Ex. B ¶ 5.

5. On August 18, 2012, Defendant Gore arrived at 1521 S. Abilene Avenue. When he arrived, he was met by a Ms. Sandra Sewasky, who identified herself as Zell

---

the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also doc. 60*, ex. A (court order appointing guardians and conservator). As for the remaining possible versions of Plaintiff's argument, they are based on inaccurate views of the law and are thus rejected.

6

Chapman's live-in caretaker. *Id.*, Ex. B ¶ 6; *doc. 89*, Affidavit of Ollie Oviedo ¶ 8, Affidavit of Sandra Sewasky ¶¶ 1, 3.

6. Ms. Ford arrived and entered the residence at 1521 S. Abilene Avenue, accompanied by Kathleen Hayes Burns. Defendant Gore also entered the residence. Ms. Ford stated her intention to remove Zell Chapman from the residence. *Doc. 60*, Ex. B ¶ 7; Affidavit of Sandra Sewasky ¶ 19.

7. While Defendant Gore remained in the kitchen, Ms. Ford entered one of the bedrooms. Plaintiff then exited the bedroom and asked Defendant Gore what he was doing in the residence. Plaintiff asserted that Zell Chapman was not leaving the residence. *Doc. 60*, Ex. B ¶¶ 8, 9; *doc. 89*, Affidavit of Sandra Sewasky ¶ 19.

8. Ms. Ford began to lead Zell Chapman out of the residence. Plaintiff moved towards them, at which point Defendant Gore intercepted Plaintiff and asked him not to interfere with Ms. Ford. Plaintiff complied with Defendant Gore's request. Defendant Gore did not make physical contact with Plaintiff. *Doc. 60*, Ex. B ¶¶ 12, 13; *doc. 89*, Affidavit of Sandra Sewasky ¶¶ 20-22.

9. Ms. Ford removed Zell Chapman from the residence. Defendant Gore assisted Ms. Sewasky in removing her possessions from the residence and then departed from the residence. *Doc. 60,* Ex. B ¶¶ 14-16; *doc. 89,* Affidavit of Sandra Sewasky ¶¶ 24-25.

> 10. Diana Rosser contacted the Roosevelt County Sheriff's Department at some point after August 18, 2012 and requested an incident report for the events at 1521 S. Abilene Ave. She was informed that there was a report. *Doc. 89,* Affidavit of Diana Rosser ¶¶ 5-6.

### IV. ANALYSIS

Plaintiff makes numerous claims against Defendants Gore and Roosevelt County, all arising out of the removal of Plaintiff's wife from their home on August 18, 2012, pursuant to a state court order. Summarized briefly, the claims are: § 1983 claims for violations of his Fourth, Eighth, and Fourteenth Amendment rights arising from Defendant Gore's involvement in the removal of his wife on August 18, 2012; a § 1985 claim against Defendants Gore and County for conspiring with co-Defendants to violate Plaintiff's constitutional rights when removing Plaintiff's wife on August 18, 2012; a § 1986 claim against both Defendants for being aware of co-Defendants' conspiracy to violate Plaintiff's civil rights and failing to prevent the violations; a § 1988 claim for attorney's fees; and a "pendent cause of action" based on *respondeat superior* liability against Defendant County. *See generally doc. 1*.

While Defendants Gore and County assert related defenses to Plaintiff's action, each requires distinct analysis and must be handled separately. I will first address Defendant Gore's defenses of qualified immunity and legal insufficiency, followed by the County's defense of absence of *respondeat superior* liability and legal insufficiency.

8

### A.     <u>Defendant Gore Is Entitled to Qualified Immunity</u>

Defendant Gore argues that he is entitled to qualified immunity on Plaintiff's § 1983 claims because they fail on the "clearly established" prong of the qualified immunity analysis. He contends first that because his actions took place pursuant to a lawful state court order, Plaintiff cannot have a clearly established right to be free of Defendant Gore's involvement in the removal of his wife. *Doc. 60* at 11-14. He further argues that to the extent that Plaintiff has attempted to plead violations of the Fourth Amendment for unreasonable search and seizure and excessive force, Plaintiff has failed show a violation of his constitutional rights. In response, Plaintiff appears to argue that Defendant Gore did not have legal authority to enter Plaintiff's home and facilitate the removal of Plaintiff's wife. *Doc. 89* at 5-7. He further argues that Defendant Gore did unlawfully use force against him during Mrs. Taylor's removal. *Id.* at 7.

###     1.     Plaintiff did not have a clearly established right to be free from Defendant Gore's intervention

"When government officials are performing discretionary functions, they will not be held liable for their conduct unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988) (quotation omitted). Plaintiff bears the burden of citing clearly established law demonstrating that Defendant Gore, in exercising his discretion to facilitate Mrs. Taylor's removal by her

9

lawful guardians through keeping the peace during the process, should have been on notice that his actions violated Plaintiff's constitutional rights. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted).

While Plaintiff raises allegations as to the legal validity of Defendant Gore's actions, Plaintiff cites no case law indicating that Defendant Gore could not reasonably rely on a facially valid state court order appearing to convey authority to Defendants Ford, Walker, and Chapman to remove Mrs. Taylor from the residence at Abilene Avenue. Defendant Gore is correct in pointing out that Plaintiff has presented no evidence that the guardianship order (*doc. 60*, Ex. A) is not legally sufficient. *Doc. 60* at 11. In the absence of any indication that the court order in question was not valid, a reasonable officer in Defendant Gore's position was entitled to rely on its legitimacy. *See Pueblo Neighborhood Health Ctrs.*, 847 F.2d at 647. Plaintiff has further cited no case that would indicate that Defendant Gore's conduct in keeping the peace during the removal violated any clearly established law pertaining to Plaintiff's constitutional rights.

    **2.    Plaintiff has not sufficiently pled a constitutional violation**

To the extent that Plaintiff has pled § 1983 causes of action against Defendant Gore on the basis of violations of the Fourth, Eighth, and Fourteenth Amendments, Plaintiff's failure to demonstrate a deprivation of his constitutional rights is fatal to each.  Defendant Gore is entitled to qualified immunity on each claim.

Plaintiff's claims of illegal search and seizure and excessive force turn on Defendant Gore's restraint of Plaintiff during Mrs. Chapman's removal.  I note at the outset that Plaintiff's claim of excessive force is wholly unsupported by the record.  In fact, it is undisputed that Defendant Gore never made physical contact with Plaintiff. *Undisputed Fact* 8, *supra*.  Turning to Plaintiff's claim of illegal search and seizure, Plaintiff apparently contends that the absence of a search warrant establishes a violation of Plaintiff's Fourth Amendment rights.  *Doc. 1* at 14.  As a lawfully appointed guardian, Defendant Ford had the authority to remove Mrs. Taylor from the residence.  N.M. Stat. § 45-5-312(B)(1) (the lawfully appointed guardian may dictate the residence of the incapacitated person).  She therefore had the right to enter into the home and had the right to consent to Defendant Gore accompanying her.  Since she was lawfully present and had consented to (indeed requested) Defendant's Gore accompaniment, his presence did not violate Plaintiff's Fourth Amendment rights.

Alternatively, if Plaintiff complains that he was unlawfully seized when Defendant Gore blocked him into a corner during Mrs. Taylor's removal, this seizure was not unreasonable.  Plaintiff was seized when Defendant Gore prevented Plaintiff

11

from interfering with Mrs. Taylor's removal. *See Walker v. City of Orem*, 451 F.3d 1139, 1147 (10th Cir. 2006). As the Tenth Circuit has explained, "in the exercise of their 'community caretaking function,' officers may occasionally find it necessary to detain individuals to prevent them from harming themselves or others." *Id.* at 1149 (*citing United States v. King,* 990 F.2d 1552, 1560 (10th Cir.1993)). The reasonableness of the seizure depends on whether it is based on specific articulable facts and whether, on the balance, the government's community caretaking interest outweighs the individual's liberty interest. *King*, 990 F.2d at 1560 (citation omitted). Here, Defendant Gore was asked to "keep the peace" while other named Defendants acted pursuant to a lawful court order. Plaintiff manifestly attempted to interfere with their actions. *See Undisputed Facts* 4-9. Defendant Gore's brief detention of Plaintiff to prevent him from doing harm to either himself or others outweighed Plaintiff's interest to be free from government interference. Defendant Gore's seizure of Plaintiff did not, therefore, violate Plaintiff's Fourth Amendment rights.

Plaintiff's Eighth and Fourteenth Amendment claims against Defendant Gore are unsustainable because they are insufficiently alleged. Plaintiff states that Defendant Gore violated his Eighth and Fourteenth Amendment rights when he assisted in removing Mrs. Taylor (*doc. 1* at 15), but fails to provide any details of the constitutional deprivation(s) he suffered in either his Complaint or his responsive briefing to Defendant Gore's motion. Because Plaintiff does not provide a factual underpinning to

12

support these allegations, they necessarily fail. *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("[P]laintiffs must allege sufficient facts to support their § 1983 claims. Bare conclusions, even read in the light most favorable to plaintiff, may prove insufficient.").

Plaintiff fails to carry his burden of demonstrating that qualified immunity should not attach to Defendant Gore's actions. I therefore recommend that the Court find Defendant Gore has qualified immunity from Plaintiff's § 1983 claims.

### B. Plaintiff's Remaining Claims Against Defendant Gore are Legally Insufficient

Defendant Gore contends that Plaintiff's remaining claims under §§ 1985, 1986, and 1988 are legally insufficient and should also fail. *Id.* at 10-11. Plaintiff alleges that Defendant Gore conspired with the co-Defendants in this action to violate his civil rights under § 1985 when removing Plaintiff's wife from their Portales residence.

Section 1985 is composed of three different subsections. Since Plaintiff has not specified the subsection under which he brings his Section 1985 claim, I assess his allegations under all three subsections. Subsection 1985(1) prohibits conspiracy "to prevent by force, intimidation, or threat, any person from holding an office under the United States or from discharging the duties thereof. A viable § 1985(1) cause of action requires allegations of class-based or racial discriminatory animus." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). Under Section 1985(2), Plaintiff must plead that Defendant Gore

13

"conspire[d] to deter, by force, intimidation, or threat, any party or witness from attending or testifying in a federal court." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (emphasis omitted). A plaintiff seeking recovery for a private conspiracy in violation of § 1985(3) must show "(i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom." *Archuleta v. City of Roswell*, slip op., 2012 WL 4950324, at *5 (D.N.M. Sept. 30, 2012).

Section 1985 allegations of conspiracy must be pled with specificity. *Brever*, 40 F.3d at 1126. Nowhere does Plaintiff allege that Defendant Gore's actions were motivated by racial or class-based animus as required for a claim raised under Sections 1985(1) or (3). The absence of such an allegation is sufficient basis alone to dismiss Plaintiff's causes of action. *See, e.g., Santistevan*, 732 F.2d at 118. As for Section 1985(2), Plaintiff has failed to allege any facts showing that Defendant Gore conspired with the intent to interfere with a party or witness testifying in federal court—his conspiracy claims relate only to Defendant Gore's interference with Plaintiff's residence and his relationship with his wife. Without such allegations, Plaintiff cannot sustain a claim under Section 1985(2).

14

Because Plaintiff has not pled facts necessary to support a claim for conspiracy under Section 1985, I recommend that Defendant Gore's request that these claims be dismissed be granted.

The existence of a cognizable § 1986 claim is dependent on the existence of a valid § 1985 claim. *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985). For the reasons discussed above, Plaintiff has failed to plead a valid § 1985 claim. Therefore, any § 1986 claim Plaintiff alleges must also fail. Further, § 1988 only allows for the award of attorneys' fees upon the success of a civil rights action, and Plaintiff has failed to plead the existence of a §§ 1983, 1985, or 1986 action. Therefore, Plaintiff's § 1988 claim against Defendant Gore also fails.

### C.  Defendant County is not Subject to *Respondeat Superior* Liability Under § 1983

A municipality is subject to liability under § 1983 only when the violation of the plaintiff's federally protected right can be attributed to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability under a *respondeat superior* theory is expressly prohibited. *Id.* at 691.

Plaintiff appears to plead both theories in his Complaint, stating that "Defendant County and City is liable under the doctrine of *Respondeat Superior* for the acts of their employees committed within the scope of their employee duties, but outside the scope of their discretion in a long train of abuses which is a custom, policy or practice to

15

violate clearly established law." *Doc. 1* at 17. If Plaintiff's claim is premised on *respondeat superior* liability, then I recommend that the Court dismiss it on that basis. If Plaintiff's claim is instead seated in a policy and practice argument, Plaintiff has pled no facts to demonstrate that the County maintains a policy or practice that encourages unconstitutional action, and his claims against the County should still be dismissed.

### D. The Court Lacks Jurisdiction Over Plaintiff's State Law Claims

Finally, Plaintiff asserts several claims involving violations of the New Mexico Constitution against Defendant County. *Doc. 1* at 17. Defendants argue that because Plaintiff has failed to comply with the procedural requirements of New Mexico Tort Claims Act in bringing his claims, this Court does not have jurisdiction to adjudicate them. *Doc. 60* at 19.[4] New Mexico state law provides that "governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act." N.M. Stat. § 41-4-2(A). Notice of the claim is a jurisdictional prerequisite to bring suit against a governmental entity under the Tort Claims Act. N.M. Stat. § 41-4-16(B); *Todd v. Montoya*, 877 F. Supp. 2d 1048, 1102 n.60 (D.N.M. 2012). Plaintiff has provided no evidence that he notified Defendant County of any of his tort claims prior to filing suit in this Court, and therefore this Court should dismiss these claims for want of jurisdiction under New Mexico law.

---

[4] Given that "no court shall have jurisdiction" over Plaintiff's state claims unless a notice has been filed, the Court need not decide whether these state claims are being considered under either its supplemental authority pursuant to 28 U.S.C. § 1367 because the claims are sufficiently related or based upon the diversity of the parties.

16

**IV.   CONCLUSION**

For the reasons discussed above, Defendants Gore and County's motion for summary judgment, *doc. 60*, should be granted. Defendant Gore should be found to have qualified immunity as against Plaintiff's § 1983 claims, and Plaintiff's remaining claims under §§ 1985, 1986, and 1988 should be dismissed.  The claims against Defendant County are either premised on a legally impermissible theory of *respondeat superior* or insufficiently pled to survive dismissal.  Finally the Court should dismiss Plaintiff's state law claims against Defendant County for lack of jurisdiction under New Mexico law.  I also recommend denying Plaintiff's motion to strike Defendants City of Portales, Hamner, Meeks Affirmative Defenses, *doc. 89*, since the motion is in fact a response to the instant motion for summary judgment, which I recommend granting.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**