IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERALD TAYLOR,

    Plaintiff,

v.                                              CIV No. 13-15 JCH/GBW

KATHLEEN M. HAYNES BURNS *et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Defendants Hamner, Meeks, and City of Portales' Motion for Summary Judgment. *Doc. 94.* Having reviewed the Motion, I conclude that (1) Defendants Hamner and Meeks are entitled to qualified immunity; (2) the claims against Defendant City of Portales are either premised on a legally impermissible theory of *respondeat superior* or insufficiently pled to survive dismissal; and (3) the Court lacks jurisdiction over Plaintiff's state law claims. I therefore recommend dismissing Plaintiff's action against them.

**I.    BACKGROUND**

The general factual and procedural background of this matter is set forth in my first Proposed Findings and Recommended Disposition. *See doc. 92.*

Defendant Hamner participated in the removal of Mrs. Taylor from Plaintiff's Portales home on August 18, 2012. *Doc. 1* ¶ 32. During the event, Defendant Hamner allegedly restrained Plaintiff's son in order to prevent him from interfering with Mrs.

Taylor's removal. *Id.* On dates unspecified in the Complaint, Defendant Meeks allegedly visited Plaintiff's residence and attempted to enter it without Plaintiff's consent. *Id.* ¶¶ 24, 28. Defendant City of Portales allegedly failed to properly supervise or record the removal of Mrs. Taylor. *Id.* ¶ 40.

Defendants City, Hamner, and Meeks moved for summary judgment on April 25 2013. In their pleading, they set forth two separate bases: Defendants Hamner and Meeks assert the defense of qualified immunity, while Defendant City argues that Plaintiff's claim cannot be valid because *respondeat superior* liability does not exist for § 1983 actions. *Doc. 94* at 1. Plaintiff did not file a response.

II. STANDARD OF REVIEW

    A. **Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact.") (internal quotation marks omitted). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

When evaluating the pleadings of a party proceeding *pro se*, a court must liberally construe them and should hold them to a less stringent standard than would be applied to the pleadings of a represented party. *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991). But "[t]his liberal treatment is not without limits, and 'this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (*quoting Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

### B. Qualified Immunity

Summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' We do not require a case directly on point, but existing precedent must have placed the

4

statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson*, 483 U.S. at 640 and citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

### III. UNDISPUTED FACTS[1]

1. On July 31, 2012, the Ninth Judicial District Court entered an order appointing D'Lyn Ford and Julie Chapman Walker as temporary guardians of Clara Zell Chapman a/k/a Zell Chapman. Randall Burnett was appointed as temporary conservator of Zell Chapman. *Doc. 94*, Ex. A-1. The appointments were made on the basis of Zell Chapman's alleged incapacity. This order was in effect on August 18, 2012. *Id.*

2. Under New Mexico law, unless inconsistent with the order establishing guardianship or some other court order, "a guardian is entitled to custody of the incapacitated person and may establish the incapacitated person's place of abode within or without New Mexico." N.M. Stat. § 45-5-312(B)(1). The language of the court order in this case is not inconsistent with the guardians having this authority with respect to Zell Chapman. No other court order which is

---

[1] All material facts set forth in the motion for summary judgment are deemed undisputed since Plaintiff did not file a response controverting them. D.N.M.LR-Civ. 56.1(b).

5

inconsistent with this authority has been submitted to the Court and Plaintiff has not argued that one exists.

3. On August 18, 2012, Defendant Hamner was employed by the City of Portales Police Department. He was on patrol when he received a call for assistance from Defendant Shawn Gore at the residence on Abilene Avenue in Portales, New Mexico. At some point after receiving the call, he went to the location. *Doc. 94*, Ex. B ¶¶ 1-4.

4. When Defendant Hamner arrived on the scene, Defendant Gore advised him that pursuant to the temporary guardianship order, Defendant Ford had the authority to remove Mrs. Taylor from the home. Defendant Gore then requested Defendant Hamner's assistance to ensure that Rodger Taylor, Plaintiff's son, did not interfere with Defendant Ford. *Id.* ¶¶ 5-6.

5. Defendant Hamner approached Rodger Taylor, advised him that he (Defendant Hamner) was there to "keep the peace" and asked Rodger Taylor to stay with him outside the residence while Mrs. Taylor was removed. Rodger Taylor complied with Defendant Hamner's request. *Id.* ¶¶ 7-8.

6. Once Mrs. Taylor was removed from the residence, Defendant Hamner remained for a few minutes to ensure that "everything was peaceful" and then departed. He did not generate an incident report based on the brevity of his stop and his limited involvement in the incident. *Id.* ¶¶ 9-11.

7. On August 21 and 28, 2012, Defendant Meeks was employed as a police officer by the City of Portales.  On both of those dates, he responded to calls requesting "civil standby" regarding Plaintiff.  *Id.,* Ex. A ¶¶ 2, 4-5, 11.

8. On August 21, 2012, Defendant Meeks was initially called to a location on 4th Street in Portales, where he met with Mr. Randall Burnett and Defendants Ford and Walker. Defendant Meeks was presented with the temporary guardianship order.  Mr. Burnett then requested Defendant Meeks' assistance in "keeping the peace" while Defendants Ford and Walker removed some of Mrs. Taylor's personal items from Plaintiff's residence. *Id.* ¶¶ 5-7.

9. Defendant Meeks advised Mr. Burnett and Defendants Ford and Walker to follow him to the residence.  At the residence, Defendant Meeks attempted to make contact with Plaintiff by knocking on the door.  Because no one answered, Defendant Meeks departed and advised Mr. Burnett and Defendants Ford and Walker that he had been unable to make contact with Plaintiff.  *Id.* ¶¶ 7-10.

10. On August 28, 2012, Defendant Tatum issued a verbal order for Defendants Ford and Walker to remove Mrs. Taylor's personal items from the residence with the assistance of law enforcement.  *Id.,* Ex. C at 7.

11. On August 28, 2012, Defendant Meeks again responded to a call requesting assistance at Plaintiff's residence. He again met with Mr. Burnett and Defendants Ford and Walker and again advised them to follow him to the residence. This

time, when Defendant Meeks knocked, an unidentified woman answered the door and invited him inside the residence. He met Plaintiff, explained why he was there, and obtained Plaintiff's consent to allow Defendants Ford and Walker to enter the residence and retrieve Mrs. Taylor's personal items. *Id.*, Ex. A ¶¶ 11-13.

12. Defendant Meeks advised Defendants Ford and Walker that they were permitted to enter the residence and then remained in the kitchen area while the items were retrieved. After the items were retrieved, Defendants Ford and Walker asked Defendant Meeks to ask Plaintiff if Defendants Ford and Walker could take one of the vehicles parked outside the residence. Defendant Meeks relayed this request to Plaintiff, and Plaintiff rejected the request. Defendant Meeks then left the property. *Id.* ¶ 14.

13. At no point during either the August 21 or August 28 visits to Plaintiff's residence did Defendant Meeks make physical contact with Plaintiff. *Id.* ¶ 16.

14. Because of the routine nature of the August 21 and August 28 visits, Defendant Meeks did not write a report about either incident. *Id.* ¶ 17.

15. There is no record that Plaintiff filed a tort claim notice with Defendant City. *Id.*, Ex. E ¶ 6.

**IV.   ANALYSIS**

Plaintiff makes numerous claims against Defendants Hamner, Meeks, and City, all arising out of the removal of Plaintiff's wife and her property from Plaintiff's home pursuant to state court orders.  Summarized briefly, the claims are: § 1983 claims for violations of his First, Fourth, Eighth, and Fourteenth Amendment rights arising from Defendant Hamner's involvement in the removal of his wife on August 18, 2012; § 1983 claims for violations of his Fourth and Fourteenth Amendment rights arising from Defendant Meeks' involvement in Defendants Ford and Walker's retrieval of Mrs. Taylor's personal items from Plaintiff's residence; a § 1985 claim against Defendants Hamner and City for conspiring with co-Defendants to violate Plaintiff's constitutional rights when removing Plaintiff's wife on August 18, 2012; a § 1985 claim against Defendants Meeks and City for conspiring with co-Defendants to violate Plaintiff's constitutional rights when removing Mrs. Taylor's personal items from Plaintiff's residence; a § 1986 claim against all Defendants for being aware of co-Defendants' conspiracy to violate Plaintiff's civil rights and failing to prevent the violations; a § 1988 claim for attorney's fees; and a "pendent cause of action" based on *respondeat superior* liability against Defendant City.  *See generally doc. 1*.

I will first address Defendants Hamner and Meeks' defenses of qualified immunity and legal insufficiency, followed by the City's defense of absence of *respondeat superior* liability and legal insufficiency.

### A.     Defendant Hamner is Entitled to Qualified Immunity

Defendant Hamner argues that he is entitled to qualified immunity on Plaintiff's § 1983 claims either because Plaintiff has failed to allege an affirmative link between any of Defendant Hamner's actions and a violation of Plaintiff's civil rights or because there has been no violation of Plaintiff's constitutional rights. *Doc. 94* at 11-13. In the alternative, he argues that Plaintiff does not have standing because any § 1983 claim that might exist against Defendant Hamner belongs to Rodger Taylor, not Plaintiff. *Id.* at 13.

#### 1.     Plaintiff Does Not Have Standing

Plaintiff's § 1983 claims against Defendant Hamner hinge entirely on Defendant Hamner's involvement in Mrs. Taylor's August 18, 2012, removal. It is undisputed that the sum total of Defendant Hamner's involvement in that event was to occupy Plaintiff's son Rodger outside the residence until the removal could be completed. Undisputed Facts 4, 5, *supra*. Defendant Hamner never made contact with Plaintiff, never entered Plaintiff's home, and in fact, never even made physical contact with Plaintiff's son. *Id*.

A plaintiff bears the burden of demonstrating that he has standing to bring a claim in federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Carrying the burden requires a showing that plaintiff has suffered a concrete and particular injury in fact, that there is a causal connection between the injury and the defendant's

10

conduct, and that a decision in the plaintiff's favor is likely to redress the injury. *Id*. at 560-61. Normally, a plaintiff cannot request relief on behalf of a third party, with the exception being when that plaintiff has a close relationship to the third party and the third party is somehow unable to assert a claim on their own. *Id.*

Here, if Defendant Hamner caused an injury, the injury would be to Rodger Taylor, the person with whom Defendant Hamner interacted with on August 18, 2012. Plaintiff has not demonstrated a factual basis on which I can conclude that there is a causal connection between Defendant Hamner's actions and a violation of *Plaintiff's* constitutional rights. And while a father-son relationship is certainly a "close" relationship, there is also no evidence that Rodger Taylor is unable to bring suit on his own behalf if there has been such a violation of his constitutional rights. As such, it does not appear that Plaintiff has standing to bring suit against Defendant Hamner and the causes of action against him should be dismissed.

## 2. Plaintiff has not sufficiently pled a constitutional violation

Even if Plaintiff does have standing to bring a § 1983 claim against Defendant Hamner, Plaintiff's § 1983 causes of action for violations of his First, Fourth, Eighth, and Fourteenth Amendments still fail because he has failed to allege a constitutional deprivation. Defendant Hamner is therefore entitled to qualified immunity.

As discussed above, Plaintiff's claims of illegal search and seizure and excessive force turn on Defendant Hamner's "restraint" of Plaintiff's son during Mrs. Taylor's

11

removal. Plaintiff apparently contends that the combination of Defendant Hamner's presence on Plaintiff's property and the absence of a search warrant establishes a violation of Plaintiff's Fourth Amendment rights. *Doc. 1* at 14.

In order for § 1983 liability to attach to Defendant Hamner, Plaintiff must show that Defendant Hamner was personally involved in the violation of Plaintiff's constitutional rights. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). As discussed above, Defendant Hamner had no interaction with Plaintiff, and did not set foot in Plaintiff's home. Nor is there any evidence that Defendant Hamner supervised any of the Defendants that did interact with Plaintiff. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (holding that a plaintiff must allege an "affirmative link" between a supervisory defendant and the constitutional violation for § 1983 liability to attach). Plaintiff's § 1983 claim should fail on this basis.

But even if the Court could somehow find a link between Defendant Hamner's actions and the actions of the other Defendants, this link is insufficient to create liability because Plaintiff has failed to demonstrate that his constitutional rights were violated. Defendant Hamner was present at the request of Defendant Gore, who was in turn present on the property at the request of Defendant Ford, Mrs. Taylor's lawfully appointed guardian. *See* N.M. Stat. § 45-5-312(B)(1) (the lawfully appointed guardian may dictate the residence of the incapacitated person); Undisputed Fact 2. Defendant Ford had the legal authority to consent to the presence of police authority in carrying

12

out her duties as guardian. Since she was lawfully present and had consented to (indeed requested) police assistance, Defendant Hamner's presence did not violate Plaintiff's Fourth Amendment rights. Further, as Defendant Hamner correctly points out, under New Mexico law, he had a duty to maintain the peace. *Doc. 94* at 12; *see Romero v. Sanchez*, 895 P.2d 212, 215 (N.M. 1995) (citing N.M. §§ 29-1-1, 29-2-18(A)). According to the undisputed facts, Defendant Hamner carried out this duty on August 18, 2012. I cannot see how, under the law, Defendant Hamner's mere lawful presence on Plaintiff's property violates Plaintiff's Fourth Amendment rights.

Plaintiff's First, Eighth, and Fourteenth Amendment claims against Defendant Hamner are similarly unsustainable because they are insufficiently alleged. Plaintiff states that Defendant Hamner violated his First, Eighth, and Fourteenth Amendment rights when he assisted in removing Mrs. Taylor (*doc. 1* at 15), but fails to provide any details of the constitutional deprivation(s) he suffered in his Complaint. Because Plaintiff does not provide a factual underpinning to support these allegations, they necessarily fail. *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("[P]laintiffs must allege sufficient facts to support their § 1983 claims. Bare conclusions, even read in the light most favorable to plaintiff, may prove insufficient.").

Plaintiff fails to carry his burden of demonstrating that qualified immunity should not attach to Defendant Hamner's actions. I therefore recommend that the Court find Defendant Hamner has qualified immunity from Plaintiff's § 1983 claims.

### B. Defendant Meeks is Entitled to Qualified Immunity

Like Defendant Hamner, Defendant Meeks argues that he is entitled to qualified immunity on Plaintiff's § 1983 claims because Plaintiff has failed to allege a violation of Plaintiff's constitutional rights. I agree, and recommend that Defendant Meeks also be granted qualified immunity.

#### 1. Plaintiff has not sufficiently pled a constitutional violation

Plaintiff's Fourth Amendment illegal search and seizure claim turns on Defendant Meeks' entry into Plaintiff's property and residence on August 21 and 28, 2012, respectively. Plaintiff apparently contends that because Defendant Meeks lacked a search warrant, he violated Plaintiff's Fourth Amendment rights first by stepping onto Plaintiff's property on August 21, 2012, and then by entering Plaintiff's residence on August 28, 2012. *See, e.g., doc. 1* at 16. Defendant Meeks did so at the request of Defendants Ford and Walker, and Defendants Ford and Walker were acting under the authority of the state court's verbal order when they requested and gained Defendant Meeks' assistance in retrieving Mrs. Taylor's property from the residence on August 28, 2012. *Doc. 94*, Ex. C at 7. They therefore had the legal right to enter into the home and further had the right to consent to Defendant Meeks accompanying them. Since Defendants Ford and Walker were lawfully present and had consented to (indeed requested) Defendant Meeks' accompaniment, his presence did not violate Plaintiff's Fourth Amendment rights.

14

As to the violations of Plaintiff's Fourteenth Amendment rights, as with Defendant Hamner, *see* Section A.2, *supra*, Plaintiff has provided insufficient facts to support a cause of action under § 1983.

Because of deficiencies described in Plaintiff's claims against Defendant Meeks, I recommend that the Court find that Defendant Meeks also has qualified immunity from Plaintiff's § 1983 claims.

C.  **Plaintiff's Remaining Claims Against Defendants Hamner and Meeks are Legally Insufficient**

Defendants Hamner and Meeks contend that Plaintiff's remaining claims under §§ 1985, 1986, and 1988 are legally insufficient and should also fail. *Doc. 94* at 20-21. Plaintiff alleges that these Defendants conspired with the co-Defendants in this action to violate his civil rights under § 1985 when removing Plaintiff's wife and her belongings from their Portales residence.

Section 1985 is composed of three different subsections. Since Plaintiff has not specified the subsection under which he brings his § 1985 claim, I assess his allegations under all three subsections. Subsection 1985(1) prohibits conspiracy "to prevent by force, intimidation, or threat, any person from holding an office under the United States or from discharging the duties thereof. A viable § 1985(1) cause of action requires allegations of class-based or racial discriminatory animus." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). Under Section 1985(2), Plaintiff must plead that Defendants Hamner and Meeks

15

"conspire[d] to deter, by force, intimidation, or threat, any party or witness from attending or testifying in a federal court." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (emphasis omitted). A plaintiff seeking recovery for a private conspiracy in violation of § 1985(3) must show "(i) a conspiracy, motivated by racially-discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom." *Archuleta v. City of Roswell*, slip op., 2012 WL 4950324, at *5 (D.N.M. Sept. 30, 2012).

Section 1985 allegations of conspiracy must be pled with specificity. *Brever*, 40 F.3d at 1126. Nowhere does Plaintiff allege that Defendants Hamner and Meeks' actions were motivated by racial or class-based animus as required for a claim raised under Sections 1985(1) or (3). The absence of such an allegation is sufficient basis alone to dismiss Plaintiff's causes of action. *See, e.g., Santistevan*, 732 F.2d at 118. As for Section 1985(2), Plaintiff has failed to allege any facts showing that Defendants Hamner and Meeks conspired with the intent to interfere with a party or witness testifying in federal court—his conspiracy claims relate only to Defendants Hamner and Meeks' interference with Plaintiff's residence and his relationship with his wife. Without such allegations, Plaintiff cannot sustain a claim under Section 1985(2).

Because Plaintiff has not pled facts necessary to support a claim for conspiracy under § 1985, I recommend that Defendants Hamner and Meeks' request that these claims be dismissed be granted.

The existence of a cognizable § 1986 claim is dependent on the existence of a valid § 1985 claim. *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985). For the reasons discussed above, Plaintiff has failed to plead a valid § 1985 claim against either Defendant. Therefore, any § 1986 claim Plaintiff alleges must also fail. Further, § 1988 only allows for the award of attorneys' fees upon the success of a civil rights action, and Plaintiff has failed to plead the existence of a §§ 1983, 1985, or 1986 action. Therefore, Plaintiff's § 1988 claims against Defendants Hamner and Meeks also fail.

### D. Defendant City is not Subject to *Respondeat Superior* Liability Under § 1983

A municipality is subject to liability under § 1983 only when the violation of the plaintiff's federally protected right can be attributed to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Liability under a *respondeat superior* theory is expressly prohibited. *Id.* at 691.

Plaintiff appears to plead both theories in his Complaint, stating that "Defendant County and City is liable under the Doctrine of *Respondeat Superior* for the acts of their employees committed within the scope of their employee duties, but outside the scope

17

of their discretion in a long train of abuses which is a custom, policy, or practice to violate clearly established law." *Doc. 1* at 17.  If Plaintiff's claim is premised on *respondeat superior* liability, then I recommend that the Court dismiss it on that basis.  If Plaintiff's claim is instead seated in a "policy and practice argument," Plaintiff has pled no facts to demonstrate that the City maintains a policy or practice that encourages unconstitutional action, and his claims against the City should still be dismissed.

### D.    The Court Lacks Jurisdiction Over Plaintiff's State Law Claims

Finally, Plaintiff asserts several claims involving violations of the New Mexico Constitution against Defendant City.  *Doc. 1* at 17.  Defendants argue that because Plaintiff has failed to comply with the procedural requirements of New Mexico Tort Claims Act (NMTCA) in bringing his claims, this Court does not have jurisdiction to adjudicate them.  *Doc. 94* at 22-23.[2]  New Mexico state law provides that "governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act."  N.M. Stat. § 41-4-2(A).  Notice of the claim is a jurisdictional prerequisite to bring suit against a governmental entity under the Tort Claims Act.  N.M. Stat. § 41-4-16(B); *Todd v. Montoya*, 877 F. Supp. 2d 1048, 1102 n.60 (D.N.M. 2012).  Plaintiff has provided no evidence that he notified Defendant City of any of his tort claims prior to

---

[2] Given that under the NMTCA "no court shall have jurisdiction" over Plaintiff's state claims unless a notice has been filed, the Court need not decide whether these state claims are being considered under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 or based upon the diversity of the parties.

18

filing suit in this Court, and therefore this Court should dismiss these claims for want of jurisdiction under New Mexico law.

## IV. CONCLUSION

For the reasons discussed above, Defendants Hamner, Meeks, and City's motion for summary judgment, *doc. 94*, should be granted. Defendants Hamner and Meeks should be found to have qualified immunity as against Plaintiff's § 1983 claims, and Plaintiff's remaining claims under §§ 1985, 1986, and 1988 should be dismissed with prejudice. The claims against Defendant City are either premised on a legally impermissible theory of *respondeat superior* or insufficiently pled to survive dismissal. Thus, they also should be dismissed with prejudice. Finally the Court should dismiss without prejudice Plaintiff's state law claims against Defendant City for lack of jurisdiction under New Mexico law.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**